UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VRITA MARINE CO. LTD.

           Plaintiff,

  -against-

SEAGULF TRADING LLC, AL AQILI GROUP, AL AQILI TRADING, AL AQILI DISTRIBUTION, GULF CENTRE FOR SOAP AND CHEMICAL INDUSTRIES LLC, KOOHIJI GROUP, GULF HORIZON INTERNATIONAL TRADING LLC., AL AQILI FURNISHINGS, AND AL AQILI FUTURE TECHNOLOGIES LLC.

           Defendants.

ECF CASE

08 CIV 5614 (JSR)

**MEMORANDUM OF LAW IN SUPPORT OF AL AQILI's
MOTION TO VACATE OR MODIFY THE MARITIME
<u>ATTACHMENT AND DISMISS THE VERIFIED COMPLAINT</u>**

                                **LAW OFFICES OF RAHUL WANCHOO**
                                Attorneys for Plaintiff
                                Empire State Building
                                350 Fifth Avenue, 59th Floor
                                New York, New York 10118
                                Phone: (646) 593-8866
                                Fax:   (212) 618-0213
                                E-mail: rwanchoo@wanchoolaw.com

    Rahul Wanchoo, Esq.
    Of Counsel

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**……………………………………………….....  1

**FACTS**……………………………………………………………………………  1

**ARGUMENT**……………………………………………………………………..  1

**POINT I**……………………………………………………………………………  1

    THE ATTACHMENT SHOULD BE VACATED AS THERE IS NO
    ADMIRALTY JURISDICTION……………………………………………  1

    A.    Rule B maritime attachment can be invoked only when admiralty    1
           jurisdiction exists over a maritime claim……………………………

    B.    The Plaintiff has the burden of establishing the federal court's
           subject matter jurisdiction over its claim…………………………….  2

    C.    Admiralty jurisdiction does not extend to sales contracts between
           parties which are not maritime in nature…………………………..  2

**POINT II**…………………………………………………………………………  4

    AL AQILI IS NOT THE ALTER EGO OF SEAGULF, HENCE PLAINTIFF
    NO VALID CLAIM AGAINST AL AQILI …………………………  4

**POINT III**………………………………………………………………………..  10

    IN THE ALTERNATIVE, THE ATTACHMENT ORDER SHOULD BE
    MODIFIED TO DIRECT ONLY THE ATTACHMENT OF EFTs
    ORIGINATED BY AL AQILI………………………………………  10

**CONCLUSION** …………………………………………………………………  12

## TABLE OF AUTHORITIES

AET Inc. Limited v. Procuradoria de Servicos Maritmos Cardoso & Fonesca, 2006 WL 3518263 (S.D.N.Y., 2006) *3..................................................... 4

Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006)................................................................................................. 4, 5, 11, 12

Banegas v. United Brands Co., 663 F. Supp. 198, 201 (D.S.C. 1986). ................................................................................................................................ 9

Brave Bulk Transport Ltd. v. Spot on Shipping Ltd., 2007 U.S. Dist. LEXIS 81137, (S.D.N.Y., 2007)............................................................................. 6, 8

Cary Marine, Inc. v. The Motorvessel Papillon, 872 F.2d 751 (6th Cir. 1989)................................................................................................................ 3

Coastal States Trading, Inc. v. Zenith Navigation S.A., 446 F. Supp. 330 (S.D.N.Y. 1977)............................................................................................. 9

Compania Sudamericana de Vapores S.A. v. Sinochem TianjinCo., 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. 2007)............................................................. 11

Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F.Supp. 2d 261, 272 (S.D.N.Y. 2007)................................................................................... 6

Fesco Ocean Management Ltd. v. High Seas Shipping Ltd., 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y., 2007)..................................................................... 7

Folksamerica Reinsurance Company v. Clean Water of New York, Inc., 413 F.3d 307, 315 (2d. Cir. 2005).......................................................................... 3

HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.A. de , 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005)........................................... 11

Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848 (11th Cir. 1988)................................................................................................................ 4

Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802 (9th Cir. 2001)................................................................................................................ 3

Lynnhaven Dolphin Corp. v. E.L.O. Enters., 776 F.2d 538 (5th Cir. 1985)................................................................................................................ 4

MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC, 268 F.3d 58, 63 (sd Cir. 2001)............................................................................... 5

Magallanes Investment, Inc. v. Circuit Systems, Inc., 994 F.2d 1214 (7th Cir. 1993).................................................................................................. 3

Maritima Petroleo E Engenharia Ltd. v. Ocean Rig 1 AS and Ocean Rig 2 AS, 78 F.Supp 2d 162, 166 (S.D.N.Y. 1999)............................................. 1, 2

Noble Shipping, Inc. v. Euro-Maritime Chartering Limited, 2003 U.S. Dist. LEXIS 230008 (S.D.N.Y. 2003)....................................................... 10

Norfolk Southern Railway Co. v. James N. Kirby, Pty. Ltd. 543 U.S. 14, 21-22 (2004)........................................................................................ 3

P.R. Ports Auth. V. Barge KATY –B, 427 F.3d 93, 105 (1st Cir. 2005)..................................................................................................... 6

Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F. Supp.2d 222, 225........................................................................................................ 11, 12

Sea Transport Contractors, Ltd. v. Industries Chemique Du Senegal, 411 F.Supp. 2d 386, 392 (S.D.N.Y. 2006)............................................... 3

Shipping Financial Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d. Cir. 1998)..................................................................................................... 2

Sirius Ins. Co. Ltd. v. Collins, 16F. 3d 34, 36 (2d Cir. 1994)..................... 3

The Ada, 250 F. 194 (2d Cir. 1918)......................................................... 4

The Guayaquil, 29 F. Supp. 578 (E.D.N.Y. 1939).................................... 4

Tide Line, Inc. v Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y., 2006)........................................................................ 7, 8

T&O Shipping Ltd. v. Source Link. Co. Ltd., 2006 WL 3513638 (S.D.N.Y., 2006)....................................................................................... 4

Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd., 2006 U.S. Dist. LEXIS 21114 (S.D.N.Y. 2006)............................................. 11

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 2006 WL 3019558 (S.D.N.Y., 2006) ...................................................................... 4

Williams v. McAllister Brothers Inc. 534 F.2d 19, 21 (2 Cir. 1976)....................................................................................................... 8

Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 236, 268 (2d. Cir. 2002)..................................................................................... 3,10, 12

**FEDERAL STATUTES & RULES**

28 U.S.C. § 1333 and 46 U.S.C. § 740.
Fed. R, Civ. P. Supplemental Rules for Certain Admiralty & Maritime Claims, Rule B.
Fed. R, Civ. P. Supplemental Rules for Certain Admiralty & Maritime Claims, Rule E(4)(f).

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. At p. 1102)
Thomas J. Schoenbaum, Admiralty and Maritime Law, §21-2 at 471 (2d ed. 1999).

## PRELIMINARY STATEMENT

Defendants, Al Aqili Group, Al Aqili Trading, Al Aqili Distribution, Gulf Centre for Soap and Chemical Industries LLC, Koohiji Group, Gulf Horizon International Trading LLC., Al Aqili Furnishings and Al Aqili Future Technologies LLC ("Al Aqili") submit this memorandum of law in support of their motion to vacate the order of maritime attachment issued by this Court on June 24, 2008 ("Attachment Order"), and for an order dismissing the Verified Complaint for lack of subject matter jurisdiction, or in the alternative to modify the Attachment Order to direct only the attachment of electronic funds transfer ("EFTs") originated by Al Aqili.

## FACTS

The facts are fully set forth in the affidavit of Rahul Wanchoo dated July 17, 2008 ("Wanchoo Aff.") and in the declaration of Mohamed Saeed Mohamed dated July 10, 2008 ("Mohamed Decl."), and, in the interest of brevity, will not be repeated here.

## ARGUMENT

### POINT I

### THE ATTACHMENT SHOULD BE VACATED AS THERE IS NO ADMIRALTY JURISDICTION

A.  **Rule B maritime attachment can be invoked only when admiralty jurisdiction exists over a maritime claim.**

Rule B maritime attachment can be invoked only when a plaintiff files a verified complaint sufficient to make a prima facie showing that the plaintiff has a valid maritime claim against the defendant in the amount sued for. See Maritima Petroleo E Engenharia Ltd. v. Ocean Rig 1 AS and Ocean Rig 2 AS, 78 F.Supp 2d 162, 166 (S.D.N.Y. 1999), citing 2 Thomas J. Schoenbaum, Admiralty and Maritime Law, §21-2 at 471 (2d ed. 1999).

Thus, a plaintiff seeking a maritime attachment order under Rule B must properly allege a maritime claim. "The absence of maritime jurisdiction would prove fatal to [a] plaintiff's attachment." Maritime Petroleo, 78 F.Supp. at 166. As will be shown herein, Plaintiff has failed to make a prima facie showing that it has a valid maritime claim.

### B. The Plaintiff has the burden of establishing the federal court's subject matter jurisdiction over its claim.

The plaintiff bears the burden of establishing that the federal court has subject matter jurisdiction over its claims. As stated above, in Rule B cases a plaintiff necessarily relies on the admiralty jurisdiction of the federal court. Therefore, the plaintiff bears the burden of showing that it has a maritime claim.

Furthermore, subject matter jurisdiction of the court must be affirmatively proved. The court may not infer subject matter jurisdiction. See Shipping Financial Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d. Cir. 1998) (stating that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

Plaintiff has alleged in its Verified Complaint that its claim falls within the admiralty jurisdiction of the court. Wanchoo Aff., Ex. 1 ¶ 1. The substance of Plaintiff's claim, however, involves the breach of a sales contract wherein Plaintiff contracted to sell a vessel to Defendant, Seagulf Trading LLC ("Seagulf"). The very basis of the claim, breach of a contract of sale, negates Plaintiff's allegation of admiralty jurisdiction.

### C. Admiralty jurisdiction does not extend to sales contracts between parties which are not maritime in nature.

2

Admiralty jurisdiction is provided for under 28 U.S.C. §1333(1) which affords district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction." Absent such requisite admiralty or maritime jurisdiction, a Rule B maritime attachment is void. Sea Transport Contractors, Ltd. v. Industries Chemique Du Senegal, 411 F.Supp. 2d 386, 392 (S.D.N.Y. 2006); see also Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 236, 268 (2d. Cir. 2002). This jurisdictional grant extends to contracts "which relate to the navigation, business or commerce of the sea. Sirius Ins. Co. Ltd. v. Collins, 16 F.3d 34, 36 (2d Cir. 1994). While courts have found the boundaries of admiralty jurisdiction over contracts difficult to draw, the United States Supreme Court held in Norfolk Southern Railway Co. v. James N. Kirby, Pty. Ltd. 543 U.S. 14, 21-22 (2004) that the ultimate determination of whether admiralty contract jurisdiction is to be conferred turns "on whether the principal objective of a contract is maritime commerce." Id. See also Folksamerica Reinsurance Company v. Clean Water of New York, Inc., 413 F.3d 307, 315 (2d. Cir. 2005).

In this case, the contract at issue is not maritime contract because its primary objective was the sale of the vessel, the VRITA N by the Plaintiff to Defendant, Seagulf. Wanchoo Aff., Ex. 1 ¶ 12. It is well settled that contracts for the sale of vessels are non-maritime contracts. E.g. Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802 (9th Cir. 2001) ("The district court's conclusion that there was no admiralty or maritime jurisdiction under 28 U.S.C. § 1333 and 46 U.S.C. § 740 was based on the venerable principle that a suit arising out of the sale of a vessel does not give rise to admiralty jurisdiction."); Magallanes Investment, Inc. v. Circuit Systems, Inc., 994 F.2d 1214 (7th Cir. 1993); Cary Marine, Inc. v. The Motorvessel Papillon, 872 F.2d 751 (6th Cir. 1989);

Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848 (11th Cir. 1988); Lynnhaven Dolphin Corp. v. E.L.O. Enters., 776 F.2d 538 (5th Cir. 1985); The Guayaquil, 29 F. Supp. 578 (E.D.N.Y. 1939); The Ada, 250 F. 194 (2d Cir. 1918).

As in the present case the primary objective of the contract at issue was the sale of the vessel, not maritime commerce, there is no admiralty jurisdiction in this matter.

## POINT II

### AL AQILI IS NOT THE ALTER EGO OF SEAGULF, HENCE PLAINTIFF HAS NO VALID CLAIM AGAINST AL AQILI

Rule E(4)(f) entitles any person claiming an interest in property restrained pursuant to Process of Maritime Attachment and Garnishment "to a prompt hearing at which he plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Rule E(4)(f).

The Second Circuit has held that "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule B and E". Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Under Rule E(4)(f), the "burden is on plaintiff to make four basic showings":

> [A]n attachment should issue under Rule B "if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.
> (Footnote omitted).

T&O Shipping Ltd. v. Source Link. Co. Ltd., 2006 WL 3513638 (S.D.N.Y., 2006); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 2006 WL 3019558 (S.D.N.Y., 2006) *2 (quoting Aqua Stoli, 460 F.3d at 445); See AET Inc. Limited v. Procuradoria de Servicos Maritmos Cardoso & Fonesca, 2006 WL 3518263 (S.D.N.Y.,

2006) *3 ("the Second Circuit held district courts are to look to the four corners of Rule B" as it 'specifies the sum total of what must be shown for a valid maritime attachment') (quoting Aqua Stoli, 460 F.3d at 446-47).

Because Al Aqili was not a party to the Memorandum of Agreement and contract of sale of the vessel between Defendant, Seagulf and the Plaintiff dated July 15, 1998, Plaintiff can have no claim against Al Aqili for its breach, and therefore was not entitled to the Attachment Order, unless Al Aqili is the alter ego of Seagulf. The Second Circuit in MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC, 268 F.3d 58 (2d Cir. 2001) has identified several factors relevant to the issue of whether one company is the alter ego of another:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debt by the dominating entity, and (10) intermingling of property between entities.

Id. at 63. Here, it would be pure speculation to conclude that Al Aqili and the Defendant Seagulf are alter egos.

Plaintiff's Verified Complaint utterly fails to set forth sufficient allegations concerning Al Aqili to justify the attachment of Al Aqili's property. Instead, Plaintiff advances *alter ego* theories of liability that rely on conclusory, speculative and baseless allegations. See Wanchoo Aff., Ex. 1. In short, Plaintiff manipulates the concept of *alter ego* liability, as well as the Rule B attachment procedure, in order to unjustly continue the

attachment of Al Aqili's property where Al Aqili is a non-party with no connection whatsoever to the dispute underlying this matter.

All pleadings seeking maritime attachments are subject to heightened pleading requirements pursuant to Rule E. See Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F.Supp. 2d 261, 272 (S.D.N.Y. 2007) (Sweet, J.). The rule provides that a "complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Id. (quoting Rule E(2)(a)). "This heightened pleading standard is ….a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." Id. (quoting P.R. Ports Auth. V. Barge KATY –B, 427 F.3d 93, 105 (1st Cir. 2005)).

The heightened pleading standard set forth in Rule E(2)(a) applies to all actions seeking maritime attachment. However, the need for such heightened pleading requirements is dramatically magnified when the underlying claim rests upon *alter ego* allegations. In Brave Bulk Transport Ltd. v. Spot on Shipping Ltd., 2007 U.S. Dist. LEXIS 81137, (S.D.N.Y., 2007) (McMahon, J.), the court held that "wholly conclusory allegations [were] simply insufficient." Id. at * 16. "Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that *is not a party to a contract sued on,* the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous [or] non-existent." Id. (emphasis added).

6

Moreover, Al Aqili contends that the plaintiff in a Rule B attachment proceeding based upon *alter ego* claims must make an evidentiary showing that it has reasonable grounds to support its allegations. See Fesco Ocean Management Ltd. v. High Seas Shipping Ltd., 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y., 2007) Buchwald , J.) (applying a reasonable grounds standard to a Rule B attachment claim based upon *alter ego* allegations but indicating that the law in the Second Circuit remains uncertain regarding what standard should apply). However, setting aside, *arguendo,* the reasonable grounds standard, recent cases demonstrate that a plaintiff must make some tangible showing that its allegations are more than mere speculation. Thus, purely theoretical allegations that loosely correspond to the factors applied within the Second Circuit for evaluating the sufficiency of *alter ego* pleadings are not enough.

In Fesco, the court denied a motion to vacate because the plaintiff offered "proof" that an alleged *alter ego* defendant had made at least ten payments on behalf of another defendant with which the plaintiff was in privity of contract. Id. at * 11. Moreover, the Fesco court's decision was bolstered by the fact that the alleged *alter ego* defendant had submitted a supplemental declaration that "tacitly acknowledged that statements in [its earlier declaration had been] misleading, if not false." Id. at * 5, 12 (noting "the inconsistencies between [the declarations] suggest[ed] that [the affiant] endeavored to hide some or all of [the relationships between the defendants] from the Court." Id. at *12).

Similarly, in Tide Line, Inc. v Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y., 2006) (Wood, J.), the court vacated an attachment as against an *alter ego* defendant but stayed release of the funds for a two week period of time pending the plaintiff's filing of an amended complaint. Id. at *55-56. The court found that the

7

plaintiff's complaint did not "state a prima facie maritime claim against [the defendant] on the basis of alter ego liability." Id. at *42. However, the plaintiff proposed amended allegations that did demonstrate the existence of such a claim because they set forth detailed factual contentions. See Id. at *45-46. Those allegations were dramatically more specific than those proposed by the Plaintiff in this matter, and included, *inter alia,* allegations that : (1) Transclear, the *alter ego* defendant had made a payment to the plaintiff, on a specified date, on behalf of the other defendant, Eastrade; (2) Transclear "was caught paying" Eastrade's debts in connection with a separate maritime attachment case against Eastrade; (3) "almost all correspondence sent to [the plaintiff concerning the charter] originated from Transclear"; and (4) "Transclear appointed an arbitrator on [Eastrade's] behalf in a 2001 arbitration in which Transclear itself *was not a party.*" Id. at *45-46.

In the instant matter, the allegations made in Plaintiff's Verified Complaint are simply insufficient. The proposed allegations: (1) fail to satisfy the heightened pleading requirements of Rule E(2)(a); (2) run roughshod over the concerns expressed by the Brave Bulk Transport Court concerning excessive extension of Rule B attachments where *alter ego* liability claims are based upon tenuous links; and (3) pale in comparison to the degree of factual, testable specificity set forth in Tide Line and Fesco. The only link in the present case is that from November 1995 through March 1999 Al Aqili owned 80 percent of Seagulf's shares. See Mohamed Decl. ¶ 3. However, the ownership by the parent of all its subsidiary's stock is not a sufficient reason, by itself, to disregard distinct corporate entities. Williams v. McAllister Brothers Inc., 534 F.2d 19, 21 (2 Cir. 1976). Moreover, actual domination, by the parent over the subsidiary, rather than the opportunity to exercise

8

control, must be shown <u>Id</u>: <u>Banegas v. United Brands Co.</u>, 663 F. Supp. 198, 201 (D.S.C. 1986). In <u>Coastal States Trading, Inc. v. Zenith Navigation S.A.</u>, 446 F. Supp. 330 (S.D.N.Y. 1977), the court refused to disregard a subsidiary corporation's separate existence. In that case, the parent and subsidiaries shared the same address and telephone number and employees of the parent company commonly referred to the subsidiaries as "divisions" or "arms" of the parent. At the highest corporate level, there was also a substantial overlap of officers and directors. All of the subsidiary corporations, financial records were prepared and maintained by the parent's accounting department. On the other hand, each of the corporations had its own employees. In addition, the corporations were "responsible for making their own profits and function[ed] as independent profit centers." <u>Id.</u> at 336. The corporations also maintained separate corporate and financial records. The court held that, although the plaintiff had proved that the corporations were indeed closely related, it failed to prove that the parent so dominated the subsidiary that the latter's corporate identity should be disregarded. The court stated that proof of close association and information dealings "is not sufficient to establish that the parent so totally dictated the business and financial practices of its subsidiaries, either generally or in the transaction here at issue, that the alter ego doctrine should be applicable." <u>Id.</u> at 338. Similarly, Al Aqili and Seagulf remained totally independent of each other. Mohamed Decl. ¶ 4. As stated by Mr. Mohamed:

> At no time during Seagulf's existence between 1995 to 1999 did Al Aqili disregard Seagulf's corporate form or conducted Seagulf's business in its own name as alleged by the Plaintiff. <u>Al Aqili and Seagulf maintained separate offices, separate telephone numbers and any dealings between the two companies were conducted at arm's-length. Furthermore, each company maintained a separate bank account with no intermingling of funds and each corporation was treated as independent profit center.</u>

9

Id. ¶ 5 (emphasis added). Moreover, Seagulf was dissolved in March 1999 which refutes Plaintiff's allegation that Al Aqili utilizes Seagulf to transfer funds to and from the Southern District of New York. See Mohamed Decl. ¶¶ 4-5. Thus, Plaintiff's vague allegations without any "hard pieces of evidence" that Al Aqili is the alter ego of Seagulf or vice versa has absolutely no merit. Therefore, the attachment should immediately be vacated, and the funds released.

### POINT III

### IN THE ALTERNATIVE, THE ATTACHMENT ORDER SHOULD BE MODIFIED TO DIRECT ONLY THE ATTACHMENT OF EFTs ORIGINATED BY AL AQILI

This point is before the Court due to case law which has developed since 2002 concerning a plaintiff's right to attach an EFT as "property" within the meaning of the Supplemental Rules B and E.

In the seminal case of Winter Storm Shipping Ltd. v. TPI, 310 F. 3d 263 (2d Cir. 2002) ("Winter Storm"), the Second Circuit held that pursuant to Rule B, a plaintiff could attach an EFT *originated* by a defendant as it was cleared by a bank in New York. The Second Circuit panel held that an EFT was "property" under maritime law. The panel in *Winter Storm* did *not* have before it the question of whether an EFT was property of a defendant-*beneficiary* of an EFT.

Between the decision of the panel in 2002 in *Winter Storm* and the decision of a different panel in 2006 in *Aqua Stoli, supra,* several district court judges held that EFT's were property "of" a defendant-beneficiary attached under Rule B, as well as of its originator, even though the originator and beneficiary were separate persons. *E.g.,* Noble Shipping, Inc. v. Euro-Maritime Chartering Limited, 2003 U.S. Dist. LEXIS 230008

(S.D.N.Y. 2003); HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.A. de , 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005); Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd., 2006 U.S. Dist. LEXIS 21114 (S.D.N.Y. 2006); Compania Sudamericana de Vapores S.A. v. Sinochem TianjinCo., 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. 2007).

In *Aqua Stoli*, the parties did not address the question whether an EFT was property of a defendant-beneficiary. Nevertheless, early in the Aqua Stoli decision, the panel stated, "Under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that jurisdiction". 460 F.3d at 436. However, since the Aqua Stoli panel did not have before it for decision the issue of whether an EFT is attachable as property of a defendant-beneficiary, this statement is *obiter dictum*, defined by Black's Law Dictionary (8th ed. At p. 1102) as: "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)."

Then, in the now infamous "footnote 6" (460 F.3d at 446 n.6), the Aqua Stoli panel communicated its concern about an issue it believed had not been adequately addressed in Winter Storm and, by implication, in Aqua Stoli (because it was not an issue in that case), namely, "whose" property an EFT was as it was cleared in New York.

In Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F. Supp. 2d 222, 225 (S.D.N.Y. 2006), this Court picked up the challenge laid down in footnote 6 of Aqua Stoli and held that an EFT could not be attached as property of a defendant-beneficiary. This Court recognized that Aqua Stoli "stated the broad rule that 'EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction".

11

<u>Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.</u>, 461 F. Supp. 2d 222, 225 (S.D.N.Y. 2006). However, your Honor construed <u>Aqua Stoli</u> footnote 6 to require a narrow reading of <u>Winter Storm.</u> Your Honor read <u>Winter Storm</u> to be limited to the <u>originator's</u> property interest in an EFT, and borrowed from state law to hold that an EFT is only the originator's property. *Id.*

In the circumstances, we respectfully submit that this Court should follow its holding in <u>Seamar Shipping</u> that an EFT is the property of an originator while in transit and NOT the property of the beneficiary while in transit. In the present case, out of the about $510,000 of EFT's presently restrained as a result of the Attachment Order, $233,702.80 are inward remittances to Al Aqili as the beneficiary of these funds. Wanchoo Aff. ¶6. Accordingly, if the Court does not vacate the attachment as requested in Points I and II, supra, the Attachment Order should be modified to direct only the attachment of EFTs originated by Defendant Al Aqili.

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, this Court should grant Al Aqili's motion to vacate the order of maritime attachment and dismiss the verified complaint, or in the alternative to modify the Attachment Order to direct only the attachment of EFTs originated by Al Aqili.

Dated: New York, New York
       July 18, 2008

Respectfully submitted

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant, Al Aqili

By: *Rahul Wanchoo*
Rahul Wanchoo (RW-8725)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VRITA MARINE CO. LTD.<br><br>Plaintiff,<br><br>-against-<br><br>SEAGULF TRADING LLC, AL AQILI GROUP, AL AQILI TRADING, AL AQILI DISTRIBUTION, GULF CENTRE FOR SOAP AND CHEMICAL INDUSTRIES LLC, KOOHIJI GROUP, GULF HORIZON INTERNATIONAL TRADING LLC., AL AQILI FURNISHINGS, AND AL AQILI FUTURE TECHNOLOGIES LLC.<br><br>Defendants. | ECF CASE<br><br>08 CIV 5614 (JSR) |

## AFFIRMATION OF SERVICE

Rahul Wanchoo affirms under penalty of perjury:

That I am an attorney admitted to practice in the State of New York and am a member of the firm of Law Offices of Rahul Wanchoo, attorneys for Defendants, Al Aqili Group, Al Aqili Trading, Al Aqili Distribution, Gulf Centre for Soap and Chemical Industries, LLC, Koohiji Group, Gulf Horizon International Trading LLC., Al Aqili Furnishings, and Al Aqili Future Technologies LLC. ("Al Aqili") in the above captioned matter.

I certify that on July 18, 2008, I electronically filed the Memorandum of Law in Support of Al Aqili's Motion to Vacate or Modify the Maritime Attachment and Dismiss the Verified Complaint, and it is being served this day on all counsel authorized to receive Notices of Electronic Filing generated by CM/ECF, including counsel below:

George M. Chalos, Esq.
Chalos & Co. P.C.
123, South Street
Oyster Bay, New York 11771
Attorneys for Plaintiff

Dated: July 18, 2008
New York, New York

_Rahul Wanchoo_
Rahul Wanchoo