UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
VRITA MARINE CO LTD.,

                *Plaintiff,*                    **08 Civ. 5614 (JSR)**

    -   against -

SEAGULF TRADING LLC, AL AQILI GROUP, AL
AQILI TRADING, AL AQILI DISTRIBUTION, GULF
CENTRE FOR SOAP AND CHEMICAL INDUSTRIES
LLC, KOOHIJI GROUP, GULF HORIZON INTERNATIONAL
TRADING L.L.C., AL AQILI FURNISHINGS, and AL AQILI
FUTURE TECHNOLOGIES LLC.,

                *Defendants.*
-----------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE RULE B ATTACHMENT AND IN SUPPORT OF ITS CROSS MOTION FOR DEFAULT JUDGMENT AS AGAINST SEAGULF TRANDING LLC

**CHALOS & CO, P.C.**
123 South Street
Oyster Bay, New York 11771
Tel: (516) 714-4300
Fax: (866) 702-4577
E-mail: gmc@chaloslaw.com

Attorneys for Plaintiff
VRITA MARINE CO LTD.

TABLE OF CONTENTS

INTRODUCTION .................................................................................1

PRELIMINARY STATEMENT ...........................................................1

POINT I – VRITA HAS MET ITS BURDEN TO SHOW WHY THE
ATTACHMENT SHOULD BE MAINTAINED.....................................2

POINT II – PLAINTIFF HAS SUFFICIENTLY PLED ITS ALTER-EGO
CLAIMS AGAINST THE EIGHT (8) APPEARING AL AQILI
DEFENDANTS .....................................................................................9

POINT III – DEFENDANTS' REQUEST TO MODIFY THE ORDER OF
ATTACHMENT TO PERMIT ATTACHMENT OF ONLY TRANSFERS
ORIGINATED BY AL AQILI SHOULD BE DENIED.......................10

    A.  Al Aqili's Request Seeks to Have This Court Aid and Abet Their
       Continuing Efforts to Defraud Plaintiff................................10

    B.  If the Court modifies (or vacates) the order of attachment, Plaintiff
       respectfully requests that the matter be certified for interlocutory
       appeal pursuant to 28 U.S.C. 1292(b) and stay the vacatur pending
       such appeal.........................................................................12

POINT IV – TO THE EXTENT THE COURT MAY FIND ANY
DEFICIENCY(S) IN PLAINTIFF'S VERIFIED COMPLAINT, PLAINTIFF
RESPECTFULLY MOVES FOR LEAVE TO FILE AN AMENDED VERIFIED
COMPLAINT AND A STAY OR ANY ORDER TO MODIFY OR VACATE
THE ORDER OF ATTACHMENT ....................................................13

POINT V – TO THE EXTENT THIS HONORABLE COURT MAY BE
INCLINED TO VACATE THE ATTACHMENT, VRITA RESPECTFULLY
REQUESTS AN OPPORTUNITY TO CONDUCT LIMITED DISCOVERY
BEFORE THE RESTRAINED FUNDS ARE RELEASED................15

POINT VI – PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT
AGAINST SEAGULF TRADING, LLC SHOULD BE GRANTED..................16

CONCLUSION...................................................................................16

TABLE OF AUTHORITIES

AET Inc. v. Procuradoria de Servicos Martimos Cardoso & Fonesca, 464 F. Supp. 2d 241, 244-46 (S.D.N.Y. 2006) ...................................................................11

Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005)...........................................................................................14

Aqua Stoli Shipping Ltd. v. Gardner Smith PTY, 460 F.3d 434 (2d Cir. 2006)..............................................................................2, 3, 4, 11, 12

Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196, 198 (2d Cir. N.Y. 1992) ....................................................................................7

Compagnia Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., No. 06 Civ. 13765, 2007 U.S. Dist. LEXIS 24737, 2007 WL 1002265 (S.D.N.Y Apr. 4, 2007)...................................................................................11

Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 19 F.2d 777, 779 (2d Cir. 1927) ..........................................................................................7

Danish Fur Breeders Association v. Olga Furs, Inc., Hatzis Bros., 1990 U.S. Dist. LEXIS 4779, at *4 (S.D.N.Y. 1990) ....................................................................16

Dominion Bulk Int'l, S.A. v. Naviera Panoceanica, S.A.C., No. 06 Civ. 6854 (LAP), 2006 U.S. Dist. LEXIS 85616, 2006 WL 3408799, at *4 (S.D.N.Y. Nov. 21, 2006) ...................................................................................11

Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993) .......................16

Essar Int'l, Ltd. v. Martrade Gulf Logistics, 2007 U.S. Dist. LEXIS 61713 *4 (S.D.N.Y. Aug. 23, 2007).................................................................2

Exxon Corp. v. Central Gulf Line, Inc., 500 U.S. 603, 611 (1991) .....................6, 7

Fesco Ocean Management Ltd. v. High Seas Shipping Ltd., No. 06 Civ. 1055 2007 WL 766115, *2-3 (S.D.N.Y. March 12, 2007) .............................................9

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 * 4  (S.D.N.Y. 2005) ....................................................................3

Florida Conference Association of Seventh-Day Adventists v. Kyriakides, 151 F.Supp.2d 1223 (C.D.CA. 2001) ..................................................................4

i

Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307
(2d Cir. 2005) ........................................................................................................6, 8

Foman v. Davis, 371 U.S. 178, 182 (1962) ...........................................................14

Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674 (1982) ................................7

General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd., 2007 U.S. Dist. LEXIS
14355 * 7 & 8 (S.D.N.Y. Feb. 21, 2007) ...........................................................10, 11

Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) Ltd., 230 F.3d
549, 555 (2d Cir. 2000)...........................................................................................7

HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A.
de C.V., 2005 U.S. Dist. LEXIS 8009 * 10 (S.D.N.Y. May 4, 2005) .................10, 12

Ice Flake Maritime Ltd. v. Westcoast AS, 2007 U.S. Dist. LEXIS 75677 *4
(S.D.N.Y. Oct. 11, 2007) ........................................................................................3

Ingersoll Milling Mach. Co. v. M/V BODENA, 829 F.2d 293, 302
(2d Cir. 1987)...........................................................................................................6

International Sea Food Ltd. v. M/V Campeche, 566 F.2d 482 (5th Cir. 1987) .......5

Japan Line, Ltd. v. Willco Oil Ltd., 424 F.Supp. 1092 ...........................................3

Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961) .........................................6

Maersk, Inc. v. Neewra, Inc., No. 05 Civ. 4356 (RCC), 2006 U.S. Dist.
LEXIS 73096, 2006 WL 2854298, at *2 (S.D.N.Y. Oct. 6, 2006) ......................11

Martima Petroleo E Engenharia Ltd. v. Ocean Rig 1AS and Ocean Rig 2 AS,
78 F.Supp. 2d 162, 166 (S.D.N.Y 1999) ...........................................................3, 4

Maryland Tuna Corp. v. MS Benares, 429 F.2d 307, 322 (2d Cir. 1970)............15

North of England Protecting and Indem. Ass'n v. M/V Nara, 1999 U.S. Dist.
LEXIS 22375 (E.D. La. 1999)..................................................................................3

Norfolk Southern Ry. Co. v. Kirby, 543 U.S. 14 (2004) ........................................6

Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) ..............13

Proton Shipping Inc. v. Sovarex, S.A., 2006 U.S. Dist. LEXIS 2389
(S.D.N.Y. 2006)........................................................................................................5

Rolls Royce Ind. Power (India) v. M.V. FRATZIS M, 1996 A.M.C. 390, 392
(S.D.N.Y. 1995) ...............................................................................................15

Route Holding, No. 06 Civ. 3428, Sept. 29, 2006 Hr'g Tr. 12:14-24 ...................9, 10

Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F.Supp. 2d 222, 225
(S.D.N.Y. 2006) ...........................................................................................11, 12

Secil Maritima, No. 06 Civ. 6345, Oct. 10, 2006 Hr'g Tr. 3:22-23, 4:1-3. ...........9, 10

Sonito Shipping So. Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532
(S.D.N.Y. 2007) .................................................................................................5

SPL Shipping Ltd. v. Gujarat Cheminex Ltd et al., 2007 U.S. Dist. LEXIS 18562
(S.D.N.Y. 2007) .................................................................................................9

T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A., 415 F. Supp. 2d 310
(S.D.N.Y. 2006) ..............................................................................................5, 9

The Shipping Corporation of India. Ltd. v. Jaldhi Overseas Pte. Ltd., 2008 U.S.
Dist LEXIS 49209 (June 27, 2008) ...............................................................11, 12

Tide Line Inc. v. Eastrade Commodities, Inc., 2007 A.M.C. 252, 270, 2006 U.S.
Dist. LEXIS 60770 (S.D.N.Y 2006) ...........................................................12, 13, 14

Vamvaship Mar. Ltd. v. Shivnath Rai Harnarain (India) Ltd., No. 06 Civ. 1849
(HB), 2006 U.S. Dist. LEXIS 21114, 2006 WL 1030227, at *2
(S.D.N.Y. Apr. 20, 2006) .................................................................................12

Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B., 825 F. 2d 709, 713
(2d Cir. 1987).....................................................................................................5

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d
275, 279 (S.D.N.Y. Oct. 23, 2006).......................................................................2

Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 275 (2d Cir. 2002)   2, 3, 4, 10, 11, 12

World Reach Shipping Ltd. v. Industrial Carriers Inc., No. 06 Civ. 3756, 2006
WL 3316828, at *2 (S.D.N.Y. Nov. 9, 2006).......................................................13

OTHER AUTHORITIES

1-XII Benedict on Admiralty § 182 (2005)

## INTRODUCTION

**COMES NOW**, Plaintiff, VRITA MARINE CO. LTD., (hereinafter "VRITA"), who submits this Memorandum of Law in Opposition to the eight (8) appearing Al Aqili Defendants' motion to vacate the pending Rule B order of attachment issued by this Court on June 24, 2008, and in support of its motion for default judgment as against defaulting defendant, Seagulf Trading LLC.

## PRELIMINARY STATEMENT

For the sake of brevity, the salient facts and supporting documents are more fully set forth in the accompanying Declarations of Leontios Hatzimichalis ("Hatzimichalis Decl."); Soto Skinitis, Esq. ("Skinitis Decl."), and George M. Chalos, Esq. ("Chalos Decl.").

In short, eight (8) of the nine (9) named Defendants have moved this Court to vacate order of attachment and for an order dismissing Plaintiff's Verified Complaint. Interestingly, these defendants collectively continue to refer to themselves as "Al Aqili" or the "Al Aqili Group," just as they did ten (10) years ago when they induced Plaintiff to enter negotiations and conclude an agreement with "the Group." In the alternative, these same eight (8) Al Aqili defendants seek the Court to modify the attachment order to direct only the attachment of electronic funds originated by the eight (8) appearing Al Aqili defendants. For the reasons more fully set forth below, it is respectfully submitted that the application of the eight (8) appearing Al Aqili defendants should be denied in all respects and that Plaintiff's application seeking an order granting Plaintiff a default judgment and recognition of the London Maritime Arbitration Association Award as against the defaulting defendant, Seagulf Trading, LLC, be granted.

## POINT I

## VRITA HAS MET ITS BURDEN TO
## SHOW WHY THE ATTACHMENT SHOULD BE MAINTAINED

Rule B provides, in relevant part:

> If a defendant is not found within a district ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property--up to the amount sued for--in the hands of garnishees named in the process ... The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing the process of attachment and garnishment.
> Rule B(1)(a)-(b).

The Second Circuit has held that the definition of "property" is broad for the purposes of a Rule B attachment. Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 275 (2d Cir. 2002); Essar Int'l, Ltd. v. Martrade Gulf Logistics, 2007 U.S. Dist. LEXIS 61713 *4 (S.D.N.Y. Aug. 23, 2007).

It is common ground that, at a Rule E hearing, the burden is on the plaintiff to demonstrate why the attachment should not be vacated. The case law of this Circuit, however, is clear that the burden of proof at this stage of the proceedings does not require the plaintiff to demonstrate its case with the same level of proof as required at trial. Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 279 (S.D.N.Y. Oct. 23, 2006).

In Wajilam, Judge Lynch addressed the appropriate level of scrutiny to be applied when presented with a motion to vacate post Aqua Stoli.[1] In summary, a plaintiff is not required to prove its case in order to defeat a motion to vacate, as discovery has not been had and it would defeat the purpose of a Rule B maritime attachment to require a plaintiff asserting a valid *prima facie* maritime claim to prove that the facts in the complaint are true. 475 F. Supp. at 279

---

[1] As the Court is aware, Aqua Stoli Shipping Ltd. v. Gardner Smith PTY, 460 F.3d 434 (2d Cir. 2006), is the leading Second Circuit case on Rule B attachments.

(*citing to* <u>Japan Line, Ltd. v. Willco Oil Ltd.</u>, 424 F.Supp. 1092, 1094 (D.Conn. 1976)); and,

*compare*, <u>Finecom Shipping Ltd. v. Multi Trade Enterprises AG</u>, 2005 U.S. Dist. LEXIS 25761

* 4  (S.D.N.Y. 2005)(In evaluating a claim on motion for counter-security, the district court

cautioned: "However, a court's ability to understand the merits of a dispute at an early stage is

limited, and courts should be reluctant to prejudge the merits of claims based essentially on the

pleadings and sparse record consisting of a few documents, in advance of discovery.").  As

summarized by Judge Lynch:

> "A rule E(4)(f) hearing is not intended to definitely resolve the dispute
> between the parties, but only to make a preliminary determination of
> whether there are reasonable grounds for issuance of the arrest warrant."

475 F. Supp. 2d at 279 (*citing* <u>North of England Protecting and Indem. Ass'n v. M/V</u>

<u>Nara</u>, 1999 U.S. Dist. LEXIS 22375 (E.D. La. 1999); *accord*, <u>Ice Flake Maritime Ltd. v.</u>

<u>Westcoast AS</u>, 2007 U.S. Dist. LEXIS 75677 *4 (S.D.N.Y. Oct. 11, 2007)(citing to the

Court of Appeals' decision in <u>Aqua Stoli</u>, Judge Castel held: "Certainly, it is not the

office of a motion to vacate to examine a claim under Rules 12 or 56 of the Federal Rules

of Civil Procedure" because attachments are to be obtained with a minimum of

litigation.").

    In order to sustain its burden on a motion to vacate, VRITA need only to demonstrate the

three (3) items required under Rule E(4)(f); namely:  1) that the plaintiff has a valid maritime

claim against the defendant;  2) the defendant cannot be found within the district; and  3) the

defendant has property within the district that has been restrained. [2] *See* <u>Martima Petroleo E</u>

---

[2] In <u>Winter Storm</u>, the Second Circuit emphatically acknowledged that the concept of property for purposes of Rule B was extremely broad and inclusive.  Judge Haight stated:

> *Initially examining admiralty law, as we must, we encounter Rule B(1) itself, which provides that a maritime plaintiff may "attach the defendant's tangible or intangible personal property." It is difficult to imagine words more broadly inclusive than "tangible or intangible." What manner of*

Engenharia Ltd. v. Ocean Rig 1AS and Ocean Rig 2 AS, 78 F.Supp. 2d 162, 166 (S.D.N.Y

1999), citing 2 Thomas J. Schoenbaum, Admiralty and Maritime Law, Section 21-2 at 471 (2d

ed. 1999); See also, Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) and

Aqua Stoli, supra.

      Here, VRITA's attachment of the funds at issue meets all three (3) burdens.  In fact, no

challenge has been presented on either the second or third prong.  Rather, the eight (8) appearing

Al Aqili defendants have simply argued that, under U.S. law, the undisputed breach by Seagulf

Trading LLC of the sale and purchase Memorandum of Agreement does not fall within the U.S.

court's admiralty jurisdiction and that they are not the alter egos of the defaulting defendant,

Seagulf Trading LLC.  However, the eight (8) appearing Al Aqili defendants have misstated both

the applicable law and the nature of the claim being presented.

      As an initial matter, Plaintiff's claim is not a claim sounding in a breach of a vessel sale

and purchase contract.  Rather, Plaintiff's claim is a claim to recognize a London Maritime

Arbitration Award previously issued against defaulting defendant, Seagulf Trading LLC and to

enforce same judgment against the defaulting defendant and its alter-egos.  As more fully set

forth in the supporting declaration of English Solicitor, Sotos Skinitis, Esq., the breach of the

Memorandum of Agreement previously agreed by and between Plaintiff and the defaulting

---

*thing can be neither tangible nor intangible and yet still be "property?"  The phrase is the secular
equivalent of the creed's reference to the maker "of all there is, seen and unseen."*

310 F.3d at 276.  Courts sitting in the Second Circuit (and nationwide), in interpreting the scope of attachable
property under Rule B, have invariably found that if the defendant has *any* form of a recognizable interest in almost
any type of property, it is attachable under the Rule.  Also, due to the broad language of Rule B, restrictions such as
title or ownership do not control the scope of the attachment of property under the Rule.  Instead, any manner of
interest in property is sufficient to permit restraint under Rule B.  *See, e.g.,* Florida Conference Association of
Seventh-Day Adventists v. Kyriakides, 151 F.Supp.2d 1223 (C.D.CA. 2001) (approving the attachment of part of a
promissory note, despite the fact that the debt was not due or payable at the time, because the promissory note
evidenced a debt which was "tangible or intangible property" under Rule B).

defendant is properly to be considered to be a maritime claim under English law (*i.e.*, the law governing the contract between Plaintiff and defaulting defendant).

The legal precedents in this District clearly establish that the question of whether a party has asserted a valid admiralty claim within the ambit of Rule B must be decided under the law of the maritime contract relied upon by the party. <u>Sonito Shipping So. Ltd. v. Sun United Maritime Ltd.</u>, 478 F. Supp. 2d 532 (S.D.N.Y. 2007); <u>T&O Shipping Ltd. v. Lydia Mar Shipping Co.</u>, S.A., 415 F. Supp. 2d 310 (S.D.N.Y. 2006). Judge Haight has clearly stated this rule as follows:

> The existence *vel non* of a valid maritime claims for purposes of a Rule B writ of attachment turns upon the applicable substantive law, <u>in this case the law of the contract</u>. (Emphasis added).

<u>Sonito Shipping</u>, 478 F. Supp. 2d at 453. Similarly, Judge Scheindlin has held that the law of the contract governs the existence of an admiralty claim whereas federal law governs the determination of whether the attachment is reasonable." <u>T&O Shipping</u>, 415 F. Supp. 2d at 314. Moreover, it has long been held that foreign maritime arbitration awards and judgment are appropriate both for attachment and enforcement in the U.S. District Courts. *See* <u>Proton Shipping Inc. v. Sovarex, S.A.</u>, 2006 U.S. Dist. LEXIS 2389 (S.D.N.Y. 2006). (holding, foreign maritime arbitration awards are appropriate for both attachment and enforcement); *See also* <u>Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B.</u>, 825 F. 2d 709, 713 (2d Cir. 1987); <u>International Sea Food Ltd. v. M/V Campeche</u>, 566 F.2d 482 (5th Cir. 1987).

Notwithstanding, the eight (8) appearing Al Aqili defendants have mischaracterized the issue presently before the Court, as well as the scope of this Court's jurisdiction in an effort to perpetuate their purposeful and fraudulent failure to pay plaintiff what is properly due and owing to Plaintiff. Under U.S. law, is it clear that "in order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its

management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping." 1-XII Benedict on Admiralty § 182 (2005). Where "the subject matter of the contract relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." Ingersoll Milling Mach. Co. v. M/V BODENA, 829 F.2d 293, 302 (2d Cir. 1987).

The Supreme Court has recognized that "the boundaries of admiralty jurisdiction over contracts – as opposed to torts or crimes – being conceptual rather than spatial, have always been difficult to draw." Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961). In general, courts "focus the jurisdictional inquiry upon whether the nature of the transaction was maritime." Exxon Corp. v. Central Gulf Line, Inc., 500 U.S. 603, 611 (1991). In doing so, courts look for something with a "genuinely salty flavor." Kossick, 365 U.S. at 742.

In Norfolk Southern Ry. Co. v. Kirby, 543 U.S. 14 (2004), the United States Supreme Court has most recently clarified the test for determining whether a contract is maritime. In Kirby, the Supreme Court held that a contract is maritime when a primary objective of the parties' contract is to accomplish the transportation of goods by sea, even where there are non-maritime components to the contract. Id. At 24; see generally Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307 (2d Cir. 2005) (explaining Kirby). In reaching this conclusion, the Court implemented a conceptual approach to contracts involving maritime and non-maritime elements and directed that the jurisdictional inquiry be focused "upon whether the nature of the transaction was maritime." Id. (citing Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 608 (1991)). The Court observed that "the fundamental interest giving rise to

6

maritime jurisdiction is the protection of maritime commerce." *Id.* At 25 (*citing* Exxon, 500 U.S. at 608; Sisson v. Ruby, 497 U.S. 358, 367 (1990) and Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674 (1982).

In Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 19 F.2d 777, 779 (2d Cir. 1927), Judge Hand held that where the maritime obligations of a contract can be "separately adjudicated, there is no objection to the jurisdiction of the admiralty pro tanto. . . . The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest." *See also* Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) Ltd., 230 F.3d 549, 555 (2d Cir. 2000) ("a federal court can exercise admiralty jurisdiction over a 'mixed' contract if: (1) the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract. . . . ").

Looking beyond the outstanding LMAA arbitration award and English law's clear characterization of the underlying claim as a maritime claim, there can be no doubt that maritime trade and commerce was integral to the agreement between the parties. The contract provided detailed terms and conditions for Plaintiff's transportation and delivery of the vessel to the defaulting defendant at Chittagong, Bangladesh. Upon arrival, Plaintiff tendered its notice of readiness for delivery, which was rejected by the defaulting defendant. After various failed attempts to amicably resolve the dispute, Plaintiff demanded arbitration. In response, Seagulf Trading, LLC proposed Mr. William Packard to act as sole arbitrator. Thereafter, the matter proceeded under the authority of the London Maritime Arbitration Association ("LMAA"), the LMAA is the world's largest maritime arbitration association. *See* Skinitis Decl. at paras. 5, 12; *See also* LMAA website at www.lmaa.org.uk.

During the course of the LMAA arbitration proceeding, both Plaintiff and Seagulf Trading LLC were represented by counsel and both substantively litigated the merits of their maritime dispute.  Plaintiff presented evidence of the damages it was forced to sustain as a result of the defaulting defendant's failure to take delivery of the vessel, which included, *inter alia*, claims for the costs incurred in delivering the vessel to Chittagong, agency fees, port expenses, and the cost/expense incurred in repatriating the vessel's crew. *See* Hatzimichalis Decl. at para 28.  Thereafter, on or about August 11, 1999, the sole arbitrator (which notably was the sole LMAA arbitrator proposed by the defaulting defendant), issued the Tribunal's Award in favor of Plaintiff.  Since such time, and despite repeated demands for payment, the defaulting defendant and its alter egos have neglected, refused and/or otherwise failed to pay Plaintiff what is properly due and owing.

As outlined by the Second Circuit in <u>Folksamerica</u>, *supra,* courts are required to "make a threshold inquiry into the subject matter of the *dispute* [and] '[b]efore attempting to categorize contractual rights as maritime or non-maritime, a federal court must first consider whether an issued related to maritime interests has been raised." <u>Folksamerica</u>, 413 F.3d at 312, (*quoting* <u>Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.,</u> 968 F.2d 196, 198 (2d Cir. N.Y. 1992) (internal citations omitted).  In this case, it is clear that whether under English law or U.S. law, the subject matter of the dispute directly relates to maritime interests and falls squarely within this Honorable Court's maritime jurisdiction.

## POINT II

### PLAINTIFF HAS SUFFICIENTLY PLED ITS ALTER-EGO CLAIMS AGAINST THE EIGHT (8) APPEARING AL AQILI DEFENDANTS

Court's evaluating whether a plaintiff has adequately pleaded an alter-ego theory of liability weight a number of considerations, "including whether the plaintiff has alleged that the alter-egos intermingled funds; overlapped in ownership, officers, directors, and personnel; shared common office space, addresses and telephone numbers; and/or whether payments or guarantees of one corporation's debts have been paid or held by the other." Fesco Ocean Management Ltd. v. High Seas Shipping Ltd., No. 06 Civ. 1055 2007 WL 766115, *2-3 (S.D.N.Y. March 12, 2007) (citation omitted).

In this case, for the reasons more fully set forth in the accompanying Hatzimichalis Declaration, plaintiff's complaint alleges all such factors are present. See, Verified Complaint at paras 21 thru 32. In making an alter-ego determination, the court is concerned with reality and not form, and with how the corporation operated. T&O Shipping, Ltd. v. Sourcelink Co., Ltd., supra. As stated above, a Plaintiff need not prove its claim at the preliminary stage of the proceeding. Here, Plaintiff has pled its claim with more than enough sufficiency to state an underlying claim under Rule B and to resist vacatur of the attachment. See SPL Shipping Ltd. v. Gujarat Cheminex Ltd et al., 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. 2007). (holding, alter ego allegations sufficient where plaintiff merely alleged "corporate form has been disregarded;" "there existed such unity of ownership and interest…that no separation exists") and writing ["In addition, the decisions of other courts in this District suggest that Plaintiff's pleadings are sufficient to resist vacatur of the attachment. [*12] The Route Holding court and the Secil Maritima court both upheld similar alter ego allegations against the defendant's motion to vacate. See Secil Maritima, No. 06 Civ. 6345 (Oct. 10, 2006 hearing transcript); Route Holding, No. 06

Civ. 3428 (Sept. 29, 2006 Order). In <u>Secil Maritima</u>, Judge Hellerstein upheld that attachment because the verified complaint alleged that Malev is "merely a shall corporation through which Evalend conducts its business" and that Evalend and Plumfield "dominate and disregard Malev's corporate form…" <u>Secil Maritima</u>, No. 06 Civ. 6345, Oct. 10, 2006 Hr'g Tr. 3:22-23, 4:1-3. And in <u>Route Holding</u>, Judge Castel upheld the attachment under the prima facie standard of review, because the plaintiff alleged that MWS "dominated and controlled" IOOI and that MWS was paying and arranging for other to satisfy IOOI's debts. <u>Route Holding</u>, No. 06 Civ. 3428, Sept. 29, 2006 Hr'g Tr. 12:14-24].

## POINT III

### <u>DEFENDANTS' REQUEST TO MODIFY THE ORDER OF ATTACHMENT TO PERMIT ATTACHMENT OF ONLY TRANSFERS ORIGINATED BY AL AQILI SHOULD BE DENIED</u>

### a. *Al Aqili's Request Seeks to Have This Court Aid and Abet Their Continuing Efforts to Defraud Plaintiff.*

Al Aqili's request that this Court modify the order of attachment to allow only transfers originated by the eight (8) appearing Al Aqili defendants is little more than a thinly veiled attempt to have this Court aid and abet their ongoing efforts to defraud the Plaintiff and otherwise avoid paying what is properly due and owing to Plaintiff. It is well-settled that more than one party can have an attachable interest in the same property. <u>Winter Storm</u>, 310 F.3d at 278. *See also,* <u>HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.</u>, 2005 U.S. Dist. LEXIS 8009 * 10 (S.D.N.Y. May 4, 2005)(The district court, Buchwald, D.J., held that defendant Proteinas had a clear attachable interest in funds which were sent as payments to Proteinas even though the sending-payor may have had an attachable interest as well.); and, <u>General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd.</u>, 2007 U.S. Dist. LEXIS 14355

* 7 & 8 (S.D.N.Y. Feb. 21, 2007) (The district court, Marrero, D.J., noted: "The result [of Aqua Stoli], allowing the attachment of an EFT against both the originator and beneficiary, was readily accepted by reason of the broad terms of Rule B's attachment language which does not require exclusive property interests).

In support of its request, the eight (8) appearing Al Aqili defendants cite to Your Honor's decision in Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F.Supp. 2d 222, 225 (S.D.N.Y. 2006). Undersigned counsel is also aware of Your Honor's recent decision in The Shipping Corporation of India. Ltd. v. Jaldhi Overseas Pte. Ltd., 2008 U.S. Dist LEXIS 49209 (June 27, 2008), wherein Your Honor granted similar relief as to that which the eight (8) appearing Al Aqili defendants are requesting here.

Nevertheless, Plaintiff respectfully submits that EFT's in the hands of an intermediary bank which are destined for the appearing defendants as beneficiaries qualify as property subject to attachment under Rule B. *See* Compagnia Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., No. 06 Civ. 13765, 2007 U.S. Dist. LEXIS 24737, 2007 WL 1002265 (S.D.N.Y Apr. 4, 2007); citing to Gen. Tankers PTE., v. Kundan Rice Mills, Ltd., No. 06 Civ. 8292 (VM), 475 F. Supp. 2d 396, 2007 U.S. Dist. LEXIS 14355, 2007 WL 541689, at *3 (S.D.N.Y. Feb. 21, 2007) ("Seamar is thus alone in its interpretation of Aqua Stoli as impliedly restricting Winter Storm attachment only to originators."); AET Inc. v. Procuradoria de Servicos Martimos Cardoso & Fonesca, 464 F. Supp. 2d 241, 244-46 (S.D.N.Y. 2006) ("Defendants' speculation that the Second Circuit at some future time may reverse course and find that EFTs are not attachable is not helpful."); Dominion Bulk Int'l, S.A. v. Naviera Panoceanica, S.A.C., No. 06 Civ. 6854 (LAP), 2006 U.S. Dist. LEXIS 85616, 2006 WL 3408799, at *4 (S.D.N.Y. Nov. 21, 2006) (upholding attachment of an EFT was at an intermediary bank); Maersk, Inc. v. Neewra,

Inc., No. 05 Civ. 4356 (RCC), 2006 U.S. Dist. LEXIS 73096, 2006 WL 2854298, at *2 (S.D.N.Y. Oct. 6, 2006) ("That the court of appeals made mention, in a footnote, of a reason Winter Storm might have been incorrectly decided is of no moment. Indeed, Aqua Stoli can only be read to reaffirm Winter Storm as the law of this circuit."); Vamvaship Mar. Ltd. v. Shivnath Rai Harnarain (India) Ltd., No. 06 Civ. 1849 (HB), 2006 U.S. Dist. LEXIS 21114, 2006 WL 1030227, at *2 (S.D.N.Y. Apr. 20, 2006) (rejecting argument that defendant has no property interest in attached funds because they were "an advance payment on an executory contract"); HBC Hamburg, 2005 U.S. Dist. LEXIS 8009, 2005 WL 1036127, at *3-4 (allowing the attachment of an EFT against both the originator and beneficiary.)

Accordingly, Plaintiff respectfully submits that all EFT's wherein the defendants are either the originator and/or intended beneficiary are properly attachable, and this Court should not modify the outstanding order of attachment.

**b. If the Court modifies (or vacates) the order of attachment, Plaintiff respectfully requests that the matter be certified for interlocutory appeal pursuant to 28 U.S.C. 1292(b) and stay the vacatur pending such appeal.**

Should the Court modify (or vacate) the pending order of attachment, Plaintiff respectfully requests that the Court certify the matter for an interlocutory appeal pursuant to 28 U.S.C. 1292(b) and stay the vacatur pending such appeal, as any such determination will clearly "involve a controlling question of law as to which there is substantial ground for difference of opinion," and because "an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. 1292(b); *See also* The Shipping Corporation of India. Ltd. v. Jaldhi Overseas Pte. Ltd., *supra;* Seamar Shipping Corp. v. Kremikovtzi Trade Ltd, *supra*; and Tide Line Inc. v. Eastrade Commodities, Inc., 2007 A.M.C. 252, 270, 2006 U.S. Dist. LEXIS 60770 (S.D.N.Y 2006).

## POINT IV

### TO THE EXTENT THE COURT MAY FIND ANY DEFICIENCY(S) IN PLAINTIFF'S VERIFIED COMPLAINT, PLAINTIFF RESPECTFULLY MOVES FOR LEAVE TO FILE AN AMENDED VERIFIED COMPLAINT AND A STAY OR ANY ORDER TO MODIFY OR VACATE THE ORDER OF ATTACHMENT

To the extent this Honorable Court may find any deficiency(s) in Plaintiff's Verified Complaint, Plaintiff respectfully moves for leave to file an Amended Verified Complaint prior to the release of any of the presently restrained funds.

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend its pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed.R.Civ.P. 15(a).

The standard to be applied in deciding whether an amendment should be permitted under Rule 15(a) is a "lenient" one. Tide Line Inc. v. Eastrade Commodities, Inc., 2007 A.M.C. 252, 270 (S.D.N.Y 2006), citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). The Court, in the specific context of a Rule B attachment action involving alter ego allegations, has previously noted that, generally, "leave to amend should be granted absent evidence of undue delay, bad faith, undue prejudice or futility…" World Reach Shipping Ltd. v. Industrial Carriers Inc.,[3] No. 06 Civ. 3756, 2006 WL 3316828, at *2 (S.D.N.Y. Nov. 9, 2006),

---

[3] In World Reach, the Court allowed plaintiff to amend its complaint to add a wholly new defendant, Blue Coast Navigation S.A., on a theory that Blue Coast was the alter ego of defendant, ICI. Id. at *2-3. This Court permitted the proposed amendment where the operative allegations of the amended complaint by plaintiff, World Reach, included allegations that:

(1)    BlueCoast "is the alter ego of ICI because ICI dominates and disregards BlueCoast's corporate form to the extent that BlueCoast is actually carrying on [ICI's] business and operations as if the same were its own, or vice versa";

(2)    BlueCoast "acts as paying agent, or arranges for other non-parties to satisfy the debts and obligations of ICI";

(3)    BlueCoast "has made hire payments to [World Reach] to satisfy ICI's debts and obligations"; and

(4)    BlueCoast had been "intimately involved with the specific details of [the Charter Agreement]."

13

citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  See also <u>Aetna Cas. & Sur. Co. v. Aniero</u>

<u>Concrete Co., Inc.</u>, 404 F.3d 566, 603-04 (2d Cir. 2005) (Second Circuit jurisprudence holds that

leave to amend should be denied for undue delay, bad faith, futility of the proposed amendment

or resulting prejudice to opposing party).  Here, there has been no bad faith or undue delay in

seeking to amend the pleading.  Rather, VRITA has promptly moved for such relief in response

to the appearing eight (8) Al Aqili defendants' motion to vacate and dismiss.  Moreover, no

prejudice to Defendants will result.

Additionally, if this Court may be inclined to vacate the attachment on the basis of any

deficiency(s) in the pleadings, Plaintiff respectfully request that the release of the attached funds

be stayed until Plaintiff has an opportunity to amend its Verified Complaint or until the matter

can be appealed to the Second Circuit.  Precedent for such a stay can be found in Chief Judge

Wood's decision in <u>Tide Line.</u>  The plaintiff in <u>Tide Line</u> submitted detailed information

substantiating its alter ego claims against defendant TransClear during the briefing and hearing

process.  In granting the request for a stay of release of the funds, Judge Wood reasoned that:

> If the Court were to vacate the attachment now, after granting Tide Line's request to amend its Complaint, the entire proceedings would almost certainly be quickly repeated. It seems that the interests of judicial efficiency would counsel in favor of keeping the attachment in place, in light of the amendments to the Verified Complaint.
>
> 2007 A.M.C. 252 at 271.

Here, Plaintiff respectfully submits that the ultimate result would be no different and the

same principles and goals of judicial economy strongly compel the same result.

---

<u>Id.</u> at 3.  The Court further found that, on the basis of the foregoing allegations, the amended pleading gave "reasonable grounds for piercing the corporate veil and plainly state a prima facie case that BlueCoast is an alter ego ICI." <u>Id.</u> at *3.  Here, plaintiff would not seek to add any additional defendants but rather simply plead its claim with a greater degree of specificity.

## POINT V

## <u>TO THE EXTENT THIS HONORABLE COURT MAY BE INCLINED TO VACATE THE ATTACHMENT, VRITA RESPECTFULLY REQUESTS AN OPPORTUNITY TO CONDUCT LIMITED DISCOVERY BEFORE THE RESTRAINED FUNDS ARE RELEASED</u>

In the event this Honorable Court may be inclined to vacate the attachment, VRITA respectfully submits it should be permitted to conduct discovery regarding the dealings between the defaulting defendant and the eight (8) appearing Al Aqili defendants. *See* <u>Maryland Tuna Corp. v. MS Benares</u>, 429 F.2d 307, 322 (2d Cir. 1970) (discovery permitted in respect to allegation that assets owned by one corporation should in fact be considered an asset of a related corporation); <u>Rolls Royce Ind. Power (India) v. M.V. FRATZIS M</u>, 1996 A.M.C. 390, 392 (S.D.N.Y. 1995) (Haight, J.) (discovery allowed on motion to vacate attachment to determine whether attachment reached assets of the named defendant).

For the reasons set forth in the Hatzimichalis Declaration, this argument is particularly compelling under the circumstances. Moreover, and as more fully set forth in the accompanying Declarations submitted by both Plaintiff and the eight (8) appearing Al Aqili defendants, it is patently clear that there is a significant degree of subterfuge and corporate shell game being played by the defendants in order to avoid having to pay their debts. As set forth in the sole declaration of Mohamed Saeed Mohamed, **submitted on behalf of <u>all</u> eight (8) of the appearing Al Aqili defendants**, there can be no dispute that "the Group" is operated and controlled as a single enterprise today, just as it was ten (10) years ago, when Al Aqili was the controlling general partner of the defaulting defendant.

Accordingly, VRITA respectfully requests that, should the Court be inclined to vacate or modify the order of attachment, it be provided an opportunity to conduct limited discovery before a decision is taken which may result in the release of the attached funds.

15

# POINT VI

## PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT AGAINST SEAGULF TRADING, LLC. SHOULD BE GRANTED

Plaintiff respectfully requests that this Court grant its motion for default judgment against Seagulf Trading, LLC., as said defendant has been given due and proper notice of these proceedings, yet has failed to timely answer, move or otherwise appear in the action.  Chalos Decl. at 11.  On or about June 30, 2008, Plaintiff commenced this proceeding by way of filing its Verified Complaint.  Following the issuance of an ex parte Order of Attachment and the subsequent successful restraint of funds, defendants were served with the Summons, Verified Complaint and otherwise given due notice of this action on or about June 30.  "In federal practice, a defendant having been served with process who fails to make timely appearance or answer is subject to judgment by default under Rule 55(a)."  *See* Danish Fur Breeders Association v. Olga Furs, Inc., Hatzis Bros., 1990 U.S. Dist. LEXIS 4779, at *4 (S.D.N.Y. 1990); *see also* Fed. R. Civ. P. 55; *see also* Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).

Accordingly, as defendant, Seagulf Trading, LLC has failed to appear in this action and the time to have done so has now expired, it is respectfully submitted that Plaintiff is entitled to a default judgment and an Order recognizing and confirming the London arbitration award as a judgment of this Court.

## CONCLUSION

WHEREFORE, and for the reasons more fully set forth above, and in the accompanying Hatzimichalis, Skinitis and Chalos Declarations, Plaintiff respectfully requests this Honorable Court enter an Order denying the eight (8)appearing Al Aqili defendants motion to vacate the

pending attachment, and grantign Plaintiff's request for a default judgment against Seagulf

Trading LLC, confirming the outstanding LMAA arbitration award as a judgment of this Court,

and for such other and further relief which the Court deems appropriate under the circumstances.


Dated: Oyster Bay, New York
      August 1, 2008

                          Respectfully submitted,

                          CHALOS & CO, P.C.
                          Attorneys for Plaintiff
                          VRITA MARINE CO. LTD.

By:        _____
                          George M. Chalos (GC-8693)
                          123 South Street
                          Oyster Bank, New York 11771
                          Tel: (516) 714 4300
                          Fax: (866) 702 4577
                          Email: gmc@chaloslaw.com