UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VRITA MARINE CO. LTD.<br><br>                    Plaintiff,<br><br>-against-<br><br>SEAGULF TRADING LLC,<br>AL AQILI GROUP,<br>AL AQILI TRADING,<br>AL AQILI DISTRIBUTION,<br>GULF CENTRE FOR SOAP AND CHEMICAL INDUSTRIES LLC,<br>KOOHIJI GROUP,<br>GULF HORIZON INTERNATIONAL TRADING L.L.C.,<br>AL AQILI FURNISHING, and<br>ALAQILI FUTURE TECHNOLOGIES L.L.C.<br><br>                    Defendants. | 08 CV 5614 (JSR)<br><br>ECF CASE |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AL AQILI'S MOTION TO VACATE OR MODIFY THE MARITIME <u>ATTACHMENT AND DISMISS THE VERIFIED COMPLAINT</u>**

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone:  (646) 593-8866
Fax:      (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

Rahul Wanchoo, Esq.
Of Counsel

## PRELIMINARY STATEMENT

Defendants, Al Aqili Group of Companies, Al Aqili Trading, Al Aqili Distribution, Gulf Centre for Soap and Chemical Industries LLC, Koohiji Group, Gulf Horizon International Trading LLC, Al Aqili Furnishings and Al Aqili Future Technologies LLC ("Al Aqili") submit this reply memorandum of law in further support of their motion to vacate the order of maritime attachment issued by the Court, and other relief.

Plaintiff, Vrita Marine Co. Ltd. ("Vrita" or "Plaintiff") takes great pains to cast its action as one to right a conspiracy between the various subsidiary companies that comprise the Al Aqili Group to frustrate it in its attempt to collect a debt allegedly owed by Seagulf Trading LLC ("Seagulf"), a defunct entity. Vrita's purpose is obvious-- to deflect attention from the fact that it has obtained the order of maritime attachment based on the breach of a vessel sale contract, a non-maritime contract which cannot form the basis of a maritime attachment.

## ARGUMENT
## POINT I
### THERE IS NO MARITIME CLAIM -- THE ATTACHMENT SHOULD BE VACATED

*A. There is No "Maritime Claim"*

Resort to the remedies provided by the Supplemental Rules is available only if Vrita's claim arises out of a breach of a maritime contract. *See* Rule A (providing that the Supplemental Rules apply to "admiralty and maritime claims" as defined by Fed.R.Civ.P. 9(h)). It is well established that federal admiralty jurisdiction does *not* extend to contracts for the sale of a vessel, such as the contract underlying Plaintiff's claim herein. Thus, Vrita does not have a "maritime claim" and the attachment should be vacated. *See* Cary Marine, Inc. v. M/V PAPILLION, 872

F.2d 751, 754-55 (6th Cir. 1989); <u>Maritima Petroleo E Engenharia Ltd. v. Ocean Rig 1 AS</u>, 78 F. Supp.2d 162, 166 (S.D.N.Y. 1999) ("The absence of maritime jurisdiction would prove fatal to plaintiff's attachment.").

Vrita argues, however, that it does have a maritime claim under English law, which governs the underlying sale contract. Plaintiff is incorrect. First, plaintiff has effectively conceded that whether the claim is maritime is determined by American law. Specifically, in both the Verified Complaint and the Affidavit for Judgment By Default ("Chalos Aff."), submitted together with plaintiff's opposition to the current motion to vacate, Plaintiff concedes that:

> This Court has jurisdiction by virtue that the underlying claim herein is an *admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure* and within the *admiralty and maritime jurisdiction of this Court under 28 U.S.C.§ 1333*.

*See e.g.* Chalos Aff. ¶4. Nowhere in the pleadings does Plaintiff allege that its rights to an attachment are governed by English law.

Second, the fact that the vessel sale contract was governed by English law is not relevant to whether Plaintiff has a maritime claim for purposes of a Rule B attachment. It is established that the attachment of funds is considered a procedural remedy, and U.S. federal law applies to procedural issues, including the validity of an attachment. <u>Dominion Bulk International, S.A. v. Naviera Panoceanica S.A.C.</u>, 2007 A.M.C. 186, 187 (S.D.N.Y. Nov. 21, 2006) *citing* <u>T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.</u>, 415 F. Supp.2d 310, 314 (S.D.N.Y. 2006) (noting that "Rule B is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law). *See also* <u>Mediterranea Di</u>

Navigazione SpA v. International Petrochemical Group S.A., 2007 U.S. Dist. LEXIS 35869 (S.D.N.Y. May 4, 2007).

Sonito Shipping So. Ltd. v. Sun United Maritime S.A., 478 F. Supp.2d 532 (S.D.N.Y. 2007), relied on by Plaintiff is not to the contrary. In Sonito, plaintiff sought a maritime attachment to secure a contingent indemnity claim under a contract of charter party, which contained an English choice of law clause. On the issue of whether the plaintiff had an "admiralty claim" for purposes of Rule B, the court held that because "a charter party is a maritime contract, so Sonito is asserting an "admiralty claim" against Sun United." Id. at 536. In other words, the court looked to American law for a determination as to whether a maritime claim existed. The court applied English law, however, to the issue of whether the "admiralty claim" [i.e., for breach of a maritime contract] was a valid "prima facie admiralty claim," as Rule B requires. The court held that English law precluded a contingent indemnity claim and thus, plaintiff's admiralty claim was not a "valid" admiralty claim. Here, because a ship sale contract is not a "maritime contract," Vrita does not have an "admiralty claim".

Third, even if English law was applicable, Plaintiff is incorrect in asserting that a claim for breach of a vessel sales contract is a "maritime claim" under English law. The jurisdiction of the Admiralty Court is set out in paragraph 20 of the Supreme Court Act 1981, which is intended to follow the Arrest Convention. Indeed, English admiralty jurisdiction refers only to claims which can be brought *in rem*. The foregoing notwithstanding, Plaintiff asserts that the Admiralty Court has jurisdiction over this dispute pursuant to the subsection of the Supreme Court Act which provides for Admiralty Court jurisdiction over "any claim to the possession or ownership of a ship or to the ownership of any share therein." See Skinitis Declaration, Exhibit "A". This grant of jurisdiction is in the nature of a possessory action (akin to an action under Supplemental

Rule D[1]) then a dispute for breach of a sales contract. Even under English law, disputes under contracts for sale of a ship are not within the jurisdiction of the Admiralty Court.

### B. The Arbitration Award is Not Enforceable

Plaintiff claims that its action is not one for breach of contract but one to recognize a London arbitration award. Plaintiff has not moved for recognition of the award. Importantly, Plaintiff cannot now move for recognition because the Convention on the Recognition and Enforcement of Foreign Arbitral Awards requires that an award must be confirmed within three years after the award was rendered. 9 U.S.C. § 207. The award here was rendered in 1999. Accordingly, Plaintiff is barred from now confirming the award.

Accordingly, as Plaintiff does not have a maritime claim, the maritime attachment should be vacated.

## POINT II

## NO BASIS FOR ALTER EGO LIABILITY

Plaintiff obtained the arbitration award against Seagulf in 1999. Plaintiff concedes that its claims against Seagulf were "fully litigated" in the arbitration. *See* Hatzimichalis Declaration at ¶ 30. Plaintiff does not allege that it raised or litigated issues concerning the corporate status of Seagulf. Now, almost 10 years after the arbitration, Plaintiff seeks to collect against Al Aqili because it now alleges that Seagulf was an alter ego of Al Aqili. *Id.* at ¶ 41. In its alter ego claim, Plaintiff does not differentiate between Al Aqili Group and the other entities within the Al Aqili Group, but lumps them all together. Indeed, it is not even clear whether Plaintiff believes

---

[1] Supplemental Rule D provides in pertinent part: In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel, in all actions so maintainable with respect to the possession of cargo or other maritime property . . . the process shall be by a warrant of arrest of the vessel, cargo, or other property . . . ."

that the various companies were shells of the parent and each other, as pled in the complaint; or whether the entities, including the parent, were shells of Seagulf as alleged in opposition to the motion to vacate. *See* Chalos Aff. ¶8 (the Al Aqili defendants "were alter egos of Seagulf Trading LLC"). This is an important distinction, because if Seagulf was an alter ego of its purported parent, then Plaintiff does not explain how roughly $89,000 belonging to Al Aqili Furnishings, and $250,000 belonging to Gulf Centre for Soap and Chemical Industries and $150,000 belonging to Al Aqili Distribution were property of Seagulf. No matter how liberal the pleading requirements may be, Plaintiff has not provided anything to establish that these companies were alter egos of Seagulf.

To the contrary, the only "evidence" Plaintiff relied upon to base its pleadings is the conclusory Hatzimichialis Declaration. Yet, what does Hatzimichalis say? He never identifies the other companies in the so-called group – how can Plaintiff in good faith sign a pleading based on this Declaration. Further, he claims a Greek shipbroker George Daskalakis was Al Aqili and Seagulf's "local agent" who made certain representations to him concerning the Al Aqili group. Hatzimichialis provides no evidence to support his statement that Daskalakis, a ship broker (not an agent) was Al Aqili's agent. He was not, and if he made any representations, which Al Aqili doubts, those representations were not authorized and untruthful. *See* Reply Declaration of Mr. Mohamed Saeed Mohamed at ¶3[2].

Mr. Hatzimichialis, and in turn, Plaintiff, seem to believe that the fact that a holding company has various subsidiary and related companies, then automatically, that corporate

---

[2] Contrary to Mr. Hatzimichialis' assertion, Mr. Daskalakis was NOT the "local agent" for Al Aqili. Mr. Daskalakis had no authority to bind either Al Aqili or Sea Gulf with respect to the purchase of the vessel nor had he any authority to make any representations or provide any documents about Al Aqili to a prospective seller. If Mr. Daskalakis made any representations about Al Aqili to Mr. Hatzimichialis or provided him with any materials that may have persuaded the Plaintiff to do business with Sea Gulf that was done without Al Aqili's knowledge.

6

structure is a shell and the entities alter egos of one another. This is not and never has been the law in this country. Even under the most liberal of pleading standards, Plaintiff cannot establish alter ego liability.

### *Plaintiff Should Not Be Granted Leave to Amend or Take Discovery*

Plaintiff requests that, in the event the Court finds its pleadings deficient, it be given leave to amend its complaint and take limited discovery. Both requests should be denied. While leave to amend is generally freely given, leave should not be granted where, as here, the proposed amendments are futile. *See* Azurite Corp. Ltd. v. Amster & Co., 52 F.3d 15 (2d Cir. 1995). Here, plaintiff does not have a "maritime claim". Thus, even if plaintiff were correct, which it is not, that the defendants were all one giant shell, plaintiff lacks the jurisdictional requisite for a maritime attachment.

### POINT III

### NO BASIS FOR DEFAULT

As a preliminary matter, the undersigned counsel does not represent Seagulf in this matter and cannot respond on its behalf. Nonetheless, and without any legal support, Plaintiff seems to believe that it can use the Rule B procedure as a substitute for an *in personam* action to enforce an arbitration award against Seagulf. Plaintiff asks to "transform Rule B into a judgment collection spider's web, ready to ensare any" assets that happen to pass by. "This is not contemplated by Rule B." In the Matter of the Arbitration between Stolt-Nielsen Transportation Group B.V. and Edible Oil Trading Corp., 2008 U.S.Dist.LEXIS 19787 at * 8 (S.D.N.Y. March 7, 2008).

Further, Plaintiff has lost its opportunity to file an action for recognition of its London arbitral award by waiting far beyond the three year period provided by statute. 9 U.S.C. § 207.

### POINT IV

### THE COURT SHOULD FOLLOW ITS RULING IN SEAMAR AND HOLD THAT AN EFT IS NOT PROPERTY OF THE DEFENDANT-BENEFICIARY SUBJECT TO ATTACHMENT UNDER RULE B

Contrary to your Honor's ruling in Seamar Shipping Corp. v. Kremikovtzi Trade Ltd. 461 F. Supp. 2d 222 (S.D.N.Y. 2006) ("Seamar"), Plaintiff submits that "EFTs in the hands of an intermediary bank which are destined for the appearing defendants as beneficiaries qualify as property subject to attachment under Rule B." Memorandum of Law in Opposition at 11.

Al Aqili respectfully submits that this Court should interpret the Second Circuit precedents in Winter Storm Shipping, Ltd. v. TPI, 310 F. 3d 263, 278 (2d Cir. 2002) ("Winter Storm") and Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 560 F. 3d 434 (2d Cir. 2006) (Áqua Stoli"), which held attachment of electronic funds transfers to or from a defendant is permissible, as it did in Seamar.

After stating that footnote 6 in Aqua Stoli "raises a serious question whether Winter Storm's implicit holding that EFT's may be considered to be a defendant's property while in transit remains good law" (461 F. Supp. 2d at 224), this Court recognized, as one must, that the Second Circuit panel in Aqua Stoli stated that "EFT's to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." Seamar, 461 F. Supp. 2d at 225 (quoting Aqua Stoli, 460 F. 3d at 436). However, the Seamar court went on to state that "there is a more narrow question at issue in this case: whether an EFT can be attached under Rule B(1)(a) where the defendant [as was the case there and here] is the intended beneficiary of the EFT, rather than the originator [as was the case in Winter Storm]." 461 F. Supp. 2d at 225. Given the

Second Circuit's statement in footnote 6 and the facts that the defendant in <u>Winter Storm</u> was "clearly the originator", and in "<u>Aqua Stoli</u>" neither the court nor the parties addressed whether the funds that were actually attached had been sent to or from the defendant (461 F. Supp. 2d at 225), this Court concluded it would be "illogical" to construe the "to or from" statement to "broaden <u>Winter Storm</u>". 461 F. Supp. 2d at 225.

Sitting as an admiralty judge charged with deciding a case in the absence of a precedent or a statute, this Court then considered what the rule should be in the case of a "beneficiary-EFT". In deciding to draw on New York state law in an important area such as banking, this Court cited Second Circuit precedent in <u>Reibor Int'l Ltd. v. Cargo Carriers (KACz-Co.) Ltd.</u> 759 F. 2d 262 (2d Cir. 1985).

> a decision. . . contrary to the general rule of the state might have disruptive consequences for the state banking system." [*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52-53 (2d Cir. 1965)] (citation omitted). New York being the situs for multiple transactions in world commerce, the New York banking system is particularly vulnerable to such disruption. Often, when a person in one foreign country makes a payment in U.S. dollars to someone in another foreign country, [**10)] the payment clears through New York. . . . It is only appropriate therefore that we look to the New York law of attachment for guidance.

<u>Seamar</u>, 461 F. Supp. 2d at 225.

The New York Uniform Commercial Code, §4-A-502, as explained in Comment 4, provides that "until the funds transfer is complete by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, the beneficiary [here, Al Aqili] has no property interest in the funds transfer which the beneficiary's creditor can reach." 461 F. Supp. 2d at 226. Adopting this rule as the rule to be applied to the case before him, your Honor vacated the attachment of a "beneficiary-EFT", *Id.*

Similarly, in the present case this Court should vacate the attachment of funds by Plaintiff which consist of EFTs still en-route to Al Aqili.

## CONCLUSION

WHEREFORE, for all the foregoing reasons and the reasons set forth in Al Aqili's Memorandum of Law in Support of its Motion to Vacate, this Court should grant Al Aqili's motion to vacate the order of maritime attachment and dismiss the verified complaint, or in the alternative to modify the Attachment Order to direct only the attachment of EFTs originated by Al Aqili.

Dated: New York, New York
      August 8, 2008

Respectfully submitted

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant, Al Aqili

By: *Rahul Wanchoo*
Rahul Wanchoo (RW-8725)